Matter of the Estate of ROSINA C. M. TAYLOR, an
Incompetent Person.

(County Court, Oneida County, January, 1912.)

Insane persons — Property and liabilities of incompetents — Debts of
lunatic — Control and regulation in general — Gifts. ·
Liens — Insane persons — Where no execution was ever issued upon a
judgment recovered against an incompetent person.

By the provision of section 86 of the Insanity Law (Consolidated
Laws, ch. 27), that "In all claims of the state upon relatives
liable for the support of a patient, or upon moneys or property
held by said patient, the state shall be deemed a preferred
creditor," it was not intended to prefer a claim of the State
for the care and maintenance of a person who was insolvent
when committed to a State hospital for the insane over
the pre-existing debts of such person, as such provision must be
read in connection with that part of said section 86 which pro-
vides that "The father, mother, husband, wife and children of
an insane person, if of sufficient ability, and the committee or
guardian of his person and estate, if his estate is sufficient for
the purpose, shall cause him to be properly and suitably cared
for and maintained."

The committee of the personal property of an incompetent, who
is simply a bailee of the court, should distribute the property
equitably among the creditors of the incompetent existing at the
time she was so adjudicated; and a claim of the State for her care
and maintenance in a State hospital for the insane which accrued
prior to the institution of the accounting proceeding of the com-
mittee is not entitled to priority of payment under section 86
of the Insanity Law which applies to obligations and "money or
property" held by the estate after there is really and equitably
an estate, ascertained and determined by the marshaling of the
assets and the payment of debts.

Where it is doubtful whether a paper expressing no considera-
tion, executed by the incompetent about a month prior to her
commitment to the hospital for the insane, by which she certified
that all the furniture in her house "shall be the property of my
sister," naming her, was intended to operate as a chattel mort-
gage, gift or will, the instrument is void for uncertainty and
indefiniteness, and if considered as a bill of sale is in contravention
of section 36 of the Personal Property Law in force at the time
of its execution, and the committee of the incompetent is entitled

to the proceeds of a sale of the furniture, which never left her possession.

Where no execution was ever issued upon a judgment recovered against the incompetent, the judgment creditor acquires no lien upon her personal property and is not entitled to a preference in the distribution of her estate.

Accounting by Harry C. Wesley, as committee.

J. S. Schwarz, for committee.

Ward J. Cagwin, as committee of Edith Morton, an incompetent person.

John C. Evans, for judgment creditors.

A. J. O'Connor, for creditors.

Jerry F. Connor, Deputy Attorney-General and special guardian.

Hazard, J. The committee has filed his account herein showing a small balance, the right to receive which is a subject of much controversy. It appears that Mrs. Morton was committed to the Utica State Hospital as an insane person about the 13th of October, 1909, and that she remained an inmate of that institution until May 14, 1910, when she obtained her liberty — just how does not appear. She was again committed as an insane person on the 12th of November, 1910, and still remains there.

The accounting party was appointed committee June 23, 1911. He found the estate to be insolvent, and it appears that it was insolvent at the time of the original commitment. The estate has been administered with due celerity; but, in the meantime and before the accounting proceedings were instituted, there accrued to the State of New York a claim for caring for the incompetent, amounting to more than the balance in the committee's hands. The entire balance is claimed by the representative of the State under the final paragraph of section 86 of the Insanity Law. We will first consider this claim. The paragraph reads: "In all claims of the state upon relatives liable for the support

of a patient, or upon moneys or property held by said patient the state shall be deemed a preferred creditor."

The Attorney-General's representative insists that, under the provision just quoted, the State is entitled to the entire fund, less the expenses of administration and less a secured claim which will be noticed later. It seems that there is no adjudication under the provision of law quoted, and we, therefore, have to consider the statute in all its bearings to ascertain, if possible, what was the legislative intent as expressed as above quoted. The statute does not say what claims its claim shall be preferred over, and it is contended by the general creditors of the incompetent that it is intended only to give the State a preference over claims arising after the party became insane. On the other hand, the State claims that the preference is intended to cover any and all unpaid claims that may exist at any time. After a careful examination of the entire proposition I am unable to agree with the State's contention. It is the policy of the State to care for its citizens who become indigent or insane, or both — in the latter case, in its State hospitals. I think the part of the statute quoted above should be read in connection with the first part of the same section, which provides: " The father, mother, husband, wife and children of an insane person, if of sufficient ability, and the committee or guardian of his person and estate, *if his estate is sufficient for the purpose,* shall cause him to be properly and suitably cared for and maintained."

This seems, quite naturally, to provide that the committee shall maintain his ward only " if his estate is sufficient for the purpose." It seems to me that the logical corollary is that, if there is no estate, the committee should not be expected to furnish support. In this case there equitably, at least, was really no estate. The incompetent was not worth a dollar at the moment she entered the State hospital; in fact, she was heavily in debt with only trifling assets. It seems to me that this estate should be administered *as of that time.* This committee is simply a bailee of the court which has taken possession of her property and should distribute it equitably among the creditors (Matter of Otis, 101 N. Y.

580); and I believe that the creditors referred to are the creditors existing at the time the incompetent was so adjudicated. Of course the final provision of section 86 must mean something, but I cannot believe that it was intended to mean that, in a case like the present one, where a bill for maintenance in a State hospital has accrued, that bill should have priority over the pre-existing debts of the incompetent. A somewhat cogent argument for a contrary conclusion is advanced by the representative of the State who cites the case of funeral charges which are, as he points out, preferred under section 2729 of the Code, and he points out, with considerable force, that a bill for funeral expenses which would accrue after decedent's death would take precedence over the pre-existing debts of the decedent and would be paid in full, although such payment might prevent the creditors of the decedent from receiving anything whatever. That case differs from the one at bar in two important particulars. One is that section 2729 specifically provides that the same, meaning the funeral expenses, "shall be preferred *to all debts and claims against the deceased.*" In *that* statute the intention is made clear as to what the preference shall be over, and it is stated that it shall be over all other debts and claims against the deceased. There is also involved, in the case of funeral expenses, a matter of public policy as well as of necessity, it being the policy of the law, as well as a matter of necessity, that a corpse must be buried; but, *per contra,* in the case we are considering, it is the policy of the State to take care of its indigent insane persons, and I do not believe that it was the intention of the Legislature to do so at the expense of their creditors. The question remains as to what the final provision of section 86 means. I apprehend it to apply to obligations and "money or property" held by the estate, after there is really and equitably an estate, ascertained and determined by the marshaling of the assets and the payment of the debts, as, for instance, the claims of minor children to support, when there is something to support them with. This theory finds support in a very recent legislative enactment (Laws of 1911, chap. 768), which,

among other things, provides as follows: "The commission may in its discretion waive the whole or a portion of the claim of the state for the cost of the support of a patient against the estate of such patient, whenever the court by which a committee was appointed shall have directed the committee to employ any part of the patient's estate *for the maintenance of his family.*" *Such* a claim would be a preferred one; but, by the provision just quoted, the Legislature has provided that it may be waived. Again, on considering the other branch of the final paragraph of section 86, we find that the preferred claim of the State extends to " relatives liable for the support of a patient;" and it appears to me impossible to believe that the Legislature could have intended to make such a claim against relatives preferred over that of the relative's other debts; yet, if the contention of the State's representative is to be sustained, such a conclusion would be inevitable. I do not believe that the Legislature so intended either as to relatives or as to the estate of the incompetent. I do not believe that it was intended to try to take something from nothing.

It is undoubtedly a fact that this incompetent might, the day before she entered the State hospital, have rightfully disbursed every item of her property; and, had she done so, she would only have paid a part of her debts. In fact, if she were in her right mind, one might say she *should* have done so. It is urged that the various creditors have been guilty of laches in not sooner taking some steps to enforce their claims. In a sense this may be true, but I think the answer to it is that the State is not to any extent whatever prejudiced by any possible laches on the part of the creditors, as it would have cared for the incompetent in exactly the same manner as she has been cared for, irrespective of whether she had any property out of which it might be paid, or not. I, therefore, reach the conclusion that it is not the intention and purport of section 86 of the Insanity Law to give to the State a preferred claim over the pre-existing debts of an insolvent patient.

Among the property which came into the hands of the committee were certain items in the house No. 214 Spring

street in the city of Rome, regarding which it appears that the incompetent had executed a paper reading as follows:

"*September* 9, 1909.

" This is to certify that all furniture in house No. 214 Spring St. shall be the property of my sister, Mrs. Carrie Kauffman.

" (Signed)   Mrs. R. Morton, 301 North George St."

and the question of the legal effect of that document is submitted for my decision upon this accounting, the property having been sold by the committee and the proceeds stipulated to await such a decision.   The facts with reference to this transaction, whatever it was, are not before me; but I understand that the goods involved were left in the possession of the incompetent, and that the document in question was given to Mrs. Kauffman.   It is a matter of doubt whether the paper in question was intended to answer the purpose of a bill of sale, or a chattel mortgage, or a gift or perhaps a will.   It will be noticed that the instrument is in the future tense, but it does not purport to say when or upon what contingency or event the property referred to shall become her sister's.   If it is to be considered a bill of sale, it is in contravention of section 36 of the Personal Property Law, which was then in force.   No consideration is expressed, and I think I should hold that the instrument is void for uncertainty and indefiniteness, and this is especially true in view of the fact that, within about a month after it was given, the party signing it was committed to the State hospital as an insane person.

Among numerous debts of the incompetent was a judgment for a considerable amount, and the judgment creditor's attorney submits the proposition that his client has a lien or preferred claim by reason thereof.   It does not appear that any execution was ever issued, and I think that, upon the authority of Matter of Wing, 83 Hun, 284, I must decide adversely to that contention.   The general policy of the law in this connection is stated in section 2364 of the Code, although that is perhaps not specifically in point here.

The net estate here, as shown by the difference between schedules A and C, is $394.59, out of which I think the committee should be allowed $75 for his services and his attorney $65 for his services and disbursements. Ward J. Cagwin appears as committee of a daughter's estate, who is also incompetent, and some matters between these estates have been adjusted, and I think he should have an allowance of $10. I am not unmindful of the fact that these allowances are not liberal, and possibly hardly even adequate, but I think that larger ones would be disproportionate to the amount of the estate. There should be paid out of this estate as per agreement one-half of the item of the claim of C. R. Edwards for money loaned and interest, which amounts to a total of $53.97, the half being $26.98, together with $41 for two months' rent, total $67.98, which shall be paid by this estate to the creditor Edwards. This makes a total of $217.98, and leaves a balance of $176.61 to be divided pro rata among the creditors Elizabeth Herrick, Carrie Kauffman, David H. Perry and C. R. Edwards, after deducting from the latter's claim the part thereof which is ordered paid above, and $26.98 which he will receive from the estate of Edith Morton. An order may be prepared accordingly.

Ordered accordingly.